The STATE of Ohio, Appellee,

v.

KELLEY, Appellant.

[Cite as *State v. Kelley,* 178 Ohio App.3d 569, 2008-Ohio-5167.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22438.

Decided Oct. 3, 2008.

Patrick J. Bonfield, Deidree E. Logan, and Mary E. Welsh, for appellee.

Charles T. Cromley, Montgomery County Public Defender's Office, for appellant.

FAIN, Judge.

{¶ 1} Defendant-appellant, Bertha Kelley, appeals from her conviction and sentence for failing to comply with the order of a city of Dayton conservation specialist, in violation of Section 93.05 of the Revised Code of General Ordinances ("RCGO") of the city of Dayton. Kelley contends that the trial court—the finder of fact in this bench trial—erred in applying strict liability, because the ordinance defining the offense, RCGO Section 93.05, does not plainly indicate a purpose to impose strict criminal liability. We agree. Consequently, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

I

{¶ 2} In March 2003, Mark Mueller, a conservation specialist for the city of Dayton, prepared an order enumerating specified violations of the Dayton Housing Code pertaining to property at 8 Grove Avenue, in Dayton, owned by the New Covenant Baptist Church. Kelley is the pastor of the church. The order specified a compliance date of June 17, 2003.

{¶ 3} The order was sent by certified mail to both the church and to Pastor Kelley at the address of the church, 1501 Chapel, in Dayton. These mailings were returned "unclaimed." The order was then re-sent to both the church and to Pastor Kelley by ordinary mail, and another copy of the order was posted on the property subject to the order.

{¶ 4} After several attempts to amicably resolve this matter, and after another inspector, Farrell Humphreys, became involved, the city of Dayton ultimately filed a criminal complaint against Kelley alleging a violation of RCGO Section 93.05. Following a bench trial, Kelley was convicted and sentenced accordingly. From her conviction and sentence, Kelley appeals. The sentence has been stayed by the trial court pending appeal.

II

{¶ 5} Kelley's sole assignment of error is as follows:

{¶ 6} "The trial court erred to the prejudice of the defendant by holding that city of Dayton Ordinance 93.05 is a strict liability offense and applying that standard to convict her."

{¶ 7} The ordinance in question, RCGO Section 93.05, provides as follows:

{¶ 8} "Whenever the Housing Inspector determines that there has been a violation of any provision of this ordinance, excepting violations of Section 93.04 or excepting where a housing violation Citation Tag has been issued pursuant to Section 93.051 R.C.G.O. he shall give notice of such violation to the person or persons responsible therefor and order compliance with the ordinance, as hereinafter provided. Such notice and order shall:

{¶ 9} "(a) Be put in writing in an appropriate form.

{¶ 10} "(b) Include a list of violations, refer to the section or sections of the ordinance violated and order remedial action which, if taken, will effect compliance with the provisions of this ordinance.

{¶ 11} "(c) Specify a reasonable time for performance.

{¶ 12} "(d) Advise the owner, operator or occupant of the procedure for appeal, excepting emergency orders issued pursuant to Section 93.09.

{¶ 13} "(e) Be served upon the owner, occupant or agent in person, provided, however, that such notice and order shall be deemed to be properly served upon such owner, occupant, or agent if a copy thereof is sent by registered or certified mail to his last known mailing address, residence or place of business, and a copy is posted in a conspicuous place in or on the dwelling affected.

{¶ 14} "Any person failing to comply with the order served pursuant to this section shall be deemed guilty of a misdemeanor and subject to the penalties set forth in Section 93.99 R.C.G.O. of the Housing Ordinances."

{¶ 15} Kelley's argument is simple and straightforward. She argues that the trial court erroneously concluded that the offense prescribed by RCGO Section 93.05 is a strict-liability offense, whereas *State v. Collins* (2000), 89 Ohio St.3d 524, 530, 733 N.E.2d 1118, holds that in order for a criminal offense to be a strict-liability offense, the legislative authority "must plainly indicate that intention [to make the offense one of strict liability] in the language of the statute." Otherwise, the default mens rea requirement is recklessness. See *Dayton v. Becker*, 2008-Ohio-2074, 2008 WL 1921677, Montgomery App. No. 22107; and *State v. Moler*, 2008-Ohio-2081, 2008 WL 1921641, Montgomery App. No. 22106.

{¶ 16} In *Moler*, we held that where the record demonstrates that the trial court, as the finder of fact, is under the misapprehension that the criminal offense charged in the case before it is a strict-liability offense, we may not make the required finding of recklessness for the first time on appeal, but must remand the cause to the finder of fact to find whether the defendant has acted recklessly. Id. at ¶ 9–10.

{¶ 17} In this case, the record demonstrates that the trial court was under the impression that the offense with which Kelley was charged is a strict-liability offense. In the antepenultimate paragraph of the trial court's decision, the trial court declares: "The Second District Court of Appeals has ruled that R.C.G.O. 93.05 is a strict liability offense * * *." The court cites three decisions of this court, all of which have been superseded by *State v. Collins,* 89 Ohio St.3d 524, 733 N.E.2d 1118. Those decisions are *Dayton v. Platt* (Jan. 23, 1989), Montgomery App. No. 10894, 1989 WL 5814; *Dayton v. Sheibenberger* (1986), 33 Ohio App.3d 263, 515 N.E.2d 948; and *Dayton v. Fuhrman* (Aug. 30, 1990), Montgomery App. No. 11845, 1990 WL 125706.

{¶ 18} As in *State v. Moler,* 2008-Ohio-2081, 2008 WL 1921641, the trial court's unequivocal reference to the offense defined in RCGO Section 93.05 as being a strict-liability offense overcomes the presumption of regularity that normally attaches to proceedings in the trial court. On this record, as in *Moler,* we cannot assume that the trial court, as the finder of fact, understood that it had to find, beyond reasonable doubt, that Kelley was reckless in failing to comply with the order, and did so find.

{¶ 19} The state's argument is difficult to follow. The state dismisses *State v. Collins,* 89 Ohio St.3d 524, 733 N.E.2d 1118, as irrelevant because it involved felony child-support violations, as opposed to housing-code violations. It then relies upon *State v. Schlosser* (1997), 79 Ohio St.3d 329, 681 N.E.2d 911, a case preceding *Collins,* for the proposition that a purpose to impose strict criminal liability may be derived not only from the plain language of the statute, but also from general legislative intent or from public policy considerations. *State v. Collins,* has made it clear, however, that the purpose to impose strict criminal liability must be apparent from the statute defining the offense. We fail to see how the distinction the state makes between the *Collins* and *Schlosser* cases is material.

{¶ 20} The state next points to the extensive administrative proceedings available to the subject of a housing order who deems herself aggrieved. But these proceedings, while salutary, have nothing to do with whether the ultimate failure of the subject of the order to comply with the order is reckless. After unsuccessfully challenging the order, the subject's ultimate failure to comply with the order may not even be voluntary, let alone reckless, if, for example, the subject were to become incapacitated and hospitalized, unable to act.

{¶ 21} The state presents its argument in reference to the availability of administrative proceedings to challenge the order as supporting an argument that Kelley has waived any exception to the trial court's misapplication of strict liability. This confuses the proceedings held in conjunction with the housing order, both before and after it was served upon Kelley, from the proceedings held

in conjunction with the criminal complaint against her for having failed to comply with the order. Waivers or forfeitures during the former proceedings may well have left Kelley unable to present, in this appeal, an otherwise meritorious challenge to the propriety of the order, but they would merely affect her ability to challenge the propriety of the order, not the validity of her conviction for having failed to comply with the order.

{¶ 22} Finally, the state makes an argument that "[t]he Appellant was not convicted based solely upon a strict liability interpretation of R.C.G.O. Section 93.05." The state then discusses various issues that were raised during the trial and that were resolved adversely to Kelley. Again, this is a puzzling argument. If the ordinance does not define a strict-liability offense, and does not specify some other degree of mens rea, the default mens rea is recklessness. *State v. Collins,* 89 Ohio St.3d 524, 733 N.E.2d 1118. Recklessness then becomes an element of the offense, and the state is required to prove it beyond a reasonable doubt. Short of a plea of guilty or of no contest, the state cannot be relieved of its obligation to prove, nor can the finder of fact be relieved of its obligation to find, beyond reasonable doubt, the element of recklessness, merely as a result of Kelley's failure to have argued this point. A defendant may remain utterly mute at trial, but the state must still prove, and the finder of fact must find, each element of the offense beyond reasonable doubt before a conviction is warranted.

{¶ 23} Running throughout the state's brief is an argument, if only by implication, that the Dayton's Housing Code, including provisions for its criminal enforcement, serves an important public need that will be subverted if the failure to comply with proper orders is not treated as a strict-liability offense. If that is so, the remedy is obvious. The city may amend its Housing Code to provide, expressly, that specified violations thereof are strict-liability offenses.

{¶ 24} Kelley's sole assignment of error is sustained.

### III

{¶ 25} Kelley's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WOLFF, P.J., and DONOVAN, J., concur.